UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ONE BEACON INSURANCE COMPANY,

Plaintiff,

-against- 06 Civ. 4150 (LAK)

THE ELITE INSURANCE AGENCY and YECHIEL BROMBERG,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Geoffrey J. Ginos
Val Wamser
NICOLETTI HORNIG CAMPISE & SWEENEY
*Attorneys for Plaintiff*

Matthew Rainis
LAWRENCE, WORDEN & RAINIS, P.C.
*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

The plaintiff insurance carrier here seeks to recover damages from its agent and the agent's principal for a loss it sustained in a previous action by its insured. It alleges, broadly speaking, that the agent breached its duties to the carrier when it failed to disclose facts concerning

the insured that, the carrier claims, would have led it to deny coverage. The matter is before the Court on defendants' motion for summary judgment dismissing the complaint.

*Facts*

*The Circumstances Underlying the Previous Action*

In describing the circumstances that gave rise to the previous action, I assume the truth of the allegations of the complaint here and supplement them with undisputed facts established on this motion.

In 1995, Meir Akerman and Eugene Loevinger formed Old Williamsburg Candle Corp. ("OWC NY"), a Brooklyn based candle company incorporated in New York.[1] In 2000, OWC NY sought to acquire a marine insurance policy from plaintiff One Beacon Insurance Company ("One Beacon") to cover the transport and storage of its inventory.[2] It discussed the matter with defendant Yechiel Bromberg, the principal of defendant Elite Insurance Agency ("Elite"), an insurance brokerage and agency that had two agency agreements with One Beacon.[3] Ultimately, One Beacon issued a marine insurance policy (the "Policy") as of April 29, 2001.[4] By its terms, the

1 Cpt. ¶¶ 7-8.

2 *Id.* ¶¶ 21-23.

3 *Id.* ¶¶ 10-11, 21-23, 82.

The first agency agreement was effective on January 1, 1999, while the second was effective April 1, 2002. They are identical in most substantive respects. "Agency Agreement" refers to the agreement in force at the relevant time. *Id.* ¶¶ 10-17, 82-87.

4 *Id.* ¶ 38.

Policy was "continuous" and "in force until cancelled by either party giving the other (30) days written notice."[5] The Policy provides further that it "shall be void if assigned or transferred without the written consent of [One Beacon]."[6] At the time the Policy was issued, its warehouse endorsement covered inventory in three Brooklyn warehouses, including one at 300 Liberty Avenue and one at 143 Alabama Avenue.[7]

On August 16, 2001, OWC NY executed an Asset Purchase Agreement ("APA" or "Agreement") pursuant to which OWC NY agreed to sell to New Williamsburg Candle Corp. ("OWC DE"), a Delaware corporation owned by an Israeli citizen, its name and all of its assets, inventory and business operations associated with its candle-making operations.[8] The transaction closed (except as to inventory) on March 19, 2002.[9] Accordingly, the OWC NY assigned the policy in question to OWC DE on that date.[10] On March 21, 2002, OWC DE changed its name to Old Williamsburg Candle Corp.[11]

While the Policy did not expire by its terms, it came up for "renewal" around this

---

5 Rainis Aff. Ex. D, ¶ 63; Cpt. ¶ 63.

6 Rainis Aff. Ex. D, ¶ 22.

7 *Id.*, Warehouse Endorsement; *see also* Cpt. ¶ 46.

8 Cpt. ¶¶ 52, 57.

9 *Id.* ¶¶ 64, 66.

10 *Id.* ¶ 68.

11 *Id.* ¶ 75.

time. One Beacon "renews" the Policy on its anniversary date by issuing a new endorsement if necessary to adjust premiums. One month prior to the April 29, 2002 policy anniversary date, One Beacon's underwriter, Palmieri, asked Bromberg to advise if any changes were required to the policy.[12] Bromberg did not inform One Beacon of the sale of the business.[13]

On December 26, 2002, a fire erupted at the premises at 300 Liberty Avenue and 143 Alabama Avenue. The buildings and their contents, including inventory owned by OWC DE, were damaged or destroyed.[14]

*The Previous Action*

In 2003, One Beacon brought suit in this Court against OWC NY and OWC DE. Insofar as it is relevant here, the complaint sought a declaration that Old Beacon was not obliged to indemnify OWC DE for any loss because it was not an insured under the policy.[15] OWC DE counterclaimed for damages for breach of the policy. Alternatively, in the event it were determined that OWC DE was not an insured under the policy, it sought reformation to reflect OWC DE as the

---

12 *Id.* ¶ 89.

13 *Id.*

14 *Id.* ¶ 91.

15 Rainis Aff. Ex. J.

It should be noted that One Beacon's position in that action, at least initially and contrary to its position here, was that the policy was not assigned by OWC NY to OWC DE. *Id.* ¶ 24.

named insured.[16]

The case was tried before me in 2005. Insofar as the decision is pertinent here, I made the following findings and conclusions in my unreported bench decision:[17]

- Prior to the April 29, 2002 anniversary date of the policy, Bromberg knew that the assets and business of OWC NY had been sold.
- Elite was One Beacon's agent, Elite's knowledge of the sale of the assets and business was acquired and held by it within the scope of its agency, and One Beacon therefore was chargeable with that knowledge.
- One Beacon's renewal of the policy with knowledge of the sale of the assets to OWC DE constituted the issuance of a new policy.[18]
- Alternatively, One Beacon's acceptance of a premium after knowledge of the assignment to OWC DE equitably estopped it from denying coverage.[19]
- OWC DE had established its right to reformation of the policy under *Court Tobacco Stores, Inc. v. Great Eastern Insurance Co.*[20] and *Princeton*

---

16 *Id.* Ex. K.

17 *Id.* Ex. N, at 358-64

18 In so ruling, I adverted to the discussion in my opinion on a prior motion for summary judgment. *One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, 386 F. Supp. 2d 394, 401 (S.D.N.Y. 2005).

19 Here too I adverted to the summary judgment opinion. *Id.*

20 43 A.D.2d 561, 349 N.Y.S.2d 8 (2d Dept. 1973).

*Restoration Corp. v. International Fidelity Insurance Co.*[21] Accordingly, judgment was entered in favor of OWC DE in the total amount of $3,158,356.16, and One Beacon's complaint for declaratory relief was dismissed.[22] The Court of Appeals affirmed "substantially for the reasons set forth in [the] . . . decision from the bench."[23]

*The Present Action*

One Beacon here seeks to shift its loss to Elite and Bromberg, essentially on the grounds that they breached an obligation to advise One Beacon of the sale of the candle business and that this caused the loss because One Beacon would not have underwritten the business had it been aware of the facts. The first three claims for relief seek recovery on breach of contract, breach of fiduciary duty and negligence theories, respectively. The fourth asserts a contract claim based on an alleged breach of the duty of good faith and fair dealing.

*The Motion*

Defendants' motion for summary judgment rests principally on the premises that (1) I held in the prior action that OWC DE was entitled to reform the policy to make it the named insured, and (2) this conclusion has preclusive effect against One Beacon in this action. Accordingly, they argue, One Beacon had a duty to indemnify OWC DE that was independent of any

---

21 338 F. Supp. 2d 391 (E.D.N.Y. 2004).

22 Rainis Aff. Ex. O.

23 *Id.* Ex. P.

errors or omissions by them. They argue also that the negligence and breach of fiduciary duty claims are barred by the statute of limitations and that the claim against Bromberg individually is legally insufficient.

*Discussion*

*A. The Meaning and Preclusive Effect of the Reformation Ruling*

In the prior action, OWC DE sought reformation to change the name on the policy from OWC NY to OWC DE on the ground of mutual mistake. It relied on *Court Tobacco*[24] and *Princeton Restoration.*[25] As my ruling in the previous bench opinion, which granted reformation, referred to these cases but otherwise was spare on this point, it is appropriate to summarize them.

In *Court Tobacco*, the plaintiff owned a tobacco shop and obtained a fire insurance policy. The policy incorrectly named the insured as "Court Tobacco Co." instead of "Court Tobacco Stores, Inc." The defendant carrier refused to pay a fire loss on the ground that the loss was suffered by "Court Tobacco Stores, Inc.," not the named insured. Trial Term agreed and dismissed the action. The Second Department, however, reversed and remanded for a new trial. In the course of doing so, it stated:

> "Prima facie, when it is established that, through innocent mistake of an applicant for insurance, the nature of the ownership of the property to be insured, whether individual or corporate, is misdescribed, the error is mutual for purposes of

24 43 A.D.2d 261, 349 N.Y.S.2d 8.

25 338 F. Supp. 2d 391.

reformation, even though the insurer is not aware of the error."[26]

It went on to note that the policies "correctly stated the character and location of the merchandise insured" and said that plaintiff would be entitled to reformation in the absence of proof either (1) of concealment by plaintiff or plaintiff's broker, or (2) that the carrier would not have accepted the risk had the insured been properly described.[27] *Princeton Restoration* is to the same effect.

In the prior action, "the character and location of the merchandise insured" was unaffected by the sale of assets, and One Beacon did not claim otherwise.[28] Rather, its argument was that its underwriter, Palmieri, would not have underwritten coverage for OWC DE had he known of the sale, because it was not his practice to insure foreign or, perhaps specifically, Israeli-owned companies.[29] In consequence, in ruling that "the insured is correct in saying that the circumstances for reformation are satisfied here, on the grounds of mutual mistake as set forth in Court Tobacco, and" *Princeton Restoration*,[30] I was expressing, albeit briefly, my finding that Palmieri's testimony on this point was not credible[31] and that One Beacon had failed to prove that it would not have

---

26 43 A.D.2d at 561, 389 N.Y.S.2d at 10.

27 43 A.D.2d at 562, 349 N.Y.S.2d at 10.

28 Indeed, its underwriter admitted as much. *One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, 03 Civ. 6901 (LAK), Trial Transcript ("TT") 264 (Rainis Decl., Exs M-N).

29 TT 234-36, 243-49, 291-301.

30 *Id.* 364.

31 I note parenthetically that I found also in subsequent proceedings that Palmieri knowingly gave false trial testimony on another issue and awarded attorneys' fees against One Beacon based on that and other bad faith conduct in the prior litigation. *One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, 03 Civ. 6901 (LAK), docket items 63, 69.

accepted the risk had it been informed of the sale of assets to OWC DE and of its Israeli ownership.[32]

Having established just what was determined in the prior action, I pass to the question of its effect here.

Under New York law,[33] a party is precluded "from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party."[34] To prevail on a claim of collateral estoppel, or issue preclusion, the party asserting the estoppel must show that "the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action."[35] The opposing party may prevail on a showing that he was denied a full and fair opportunity to litigate the issue in the prior action.[36]

The issue in the prior action was whether One Beacon established that Palmieri would

---

32 The shorthand expression was all that was necessary in view of prior comments I made during the trial in which I expressed my views that (1) Palmieri's testimony on this point was self-interested and unsubstantiated, and (2) Palmieri in fact would have underwritten the policy if he had known of the change of ownership "because the company is the same and the loss record would have been the same and the prior record of paying bills would have been the same." TT 297-98, 301. I added that "I'm not buying what he's selling." *Id.* 298.

33 "[W]hen a federal court sitting in diversity applies state substantive law as the rule of decision in a case, the preclusive effect of any decision by the federal court in that case is to be determined by the state preclusion law of the state in which the district court sits." *NAS Elecs., Inc. v. Transtech Elecs. Pte Ltd.*, 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001)).

34 *Parker v. Blauvelt Volunteer Fire Co., Inc.*, 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 482 (1999) (quoting *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826 (1984)).

35 *Id.*

36 *Id.*, 93 N.Y.2d at 349, 690 N.Y.S.2d at 482-83.

not have underwritten the risk had he known that the business had been sold to OWC DE and that OWC DE was owned by an Israeli. One Beacon would have to prove precisely the same thing here in order to establish damages proximately caused by any breach of duty by defendants in failing to notify it of the sale of assets. In consequence, the requirement of identity of issues is satisfied.

One Beacon does not dispute that it had a fair opportunity to present its case on that point. It quibbles with whether the issue was actually decided, arguing in essence that my brief reference to the reformation claim does not reflect an actual decision. But that contention lacks merit as explained above. So the only real question is whether the issue was necessarily decided and material to the judgment.

As is readily apparent from my prior bench opinion, the decision rests on three alternative grounds. First, I held that One Beacon's renewal of the policy with knowledge of the sale of the assets constituted the issuance of a new policy to OWC DE. Even if that were not the case, One Beacon's acceptance of a premium after knowledge of the assignment to OWC DE equitably estopped it from denying coverage. And finally, OWC DE in any event was entitled to reformation of the policy to substitute its name as the insured on the ground of mutual mistake because there was no claim of concealment by OWC DE or any broker acting on its behalf, and One Beacon failed to prove that it would have voided the policy or declined to continue it on the anniversary date had it known that OWC DE was the insured.

This raises the question whether alternative holdings are entitled to issue preclusive effect. Issue preclusion will prevent relitigation of an alternative holding "only when it is clear that

the prior determination squarely addressed and specifically decided the issue."[37] Alternative holdings are given preclusive effect where "the decision of the trial court gives significant internal evidence of the thorough and careful deliberation by that court, both in its consideration of the proof introduced and of the applicable law, . . . thus negativing any conclusion that the trial court's resolution was casual or of any lesser quality than had the outcome of the trial depended solely on this issue."[38] In contrast, no preclusive effect is given where the alternative holding is a "nonspecific nonfactual determination"[39] or where "it is unclear . . . whether the [court] fully considered the issue."[40]

Here, my ruling "squarely addressed and specifically decided" the reformation claim. At trial, One Beacon aggressively pursued its theory that it would have refused to insure OWC DE had it known of the Israeli ownership. I thoroughly considered this argument, asking Palmieri several questions of my own, and concluded that his testimony on that issue was not credible.[41] I cited two cases standing for the proposition that an insurance contract will be reformed to correct an innocent mistake by the insured as long as the insurer would not have refused the risk had he

---

37 *O'Connor v. G&R Packing Co.*, 53 N.Y.2d 278, 280, 440 N.Y.S.2d 920, 920 (1981).

38 *Malloy v. Trombley*, 50 N.Y.2d 46, 52, 427 N.Y.S.2d 969, 973 (1980); *see also Aldrich v. State*, 110 A.D.2d 331, 333, 494 N.Y.S.2d 662, 664 (3d Dept. 1985) (giving preclusive effect where alternative holding "was thoroughly and carefully addressed").

39 *O'Connor*, 53 N.Y.2d at 283, 440 N.Y.S.2d at 922.

40 *Atlantic Mutual Ins. Co. v. Lauria*, 291 A.D.2d 492, 493, 739 N.Y.S.2d 394, 396 (2d Dept. 2002).

41 *See* supra note 32.

known of the mistake. The record clearly reflects the "thorough and careful deliberation" I gave the issue.

On appeal, One Beacon's brief to the Second Circuit in the prior case specifically challenged the reformation holding.[42] As the Court of Appeals affirmed the judgment appealed from "substantially for the reasons set forth in [the] . . . decision from the bench," it cannot be said that it affirmed one ground and disregarded the reformation issue. Accordingly, this Court's finding on that issue precludes One Beacon from contending here that it would have voided the policy or declined to continue it on the anniversary date if it had been informed of the information known to Elite.

*B. The Consequences of Preclusion*

Each of plaintiff's four claims for relief depends upon proof that it would have voided the policy, or declined to continue it on the anniversary date – and thus avoided the loss – if Elite had been informed of the sale of assets and the Israeli ownership of the buyer, OWC DE. As it is precluded from proving precisely that by the findings in the previous action, it cannot prevail in this action.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint is granted. The resolution of the case on this ground makes it unnecessary to address

---

42 *One Beacon Ins. Co. v. Old Williamsburg Candle Corp.*, No. 05-6959-CV, Brief and Special Appendix for Plaintiff-Appellant, at 17-18 (2d Cir. filed Mar. 1, 2006).

defendants' other contentions or plaintiff's Rule 56(f) affidavit.

SO ORDERED.

Dated: February 16, 2007

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)